# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

FIREBLOK IP HOLDINGS, LLC

        Plaintiff,

  v.

HILTI, INC.,

        Defendant.

C.A. No. 2:19-cv-0023

**JURY TRIAL DEMANDED**

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DENYING DEFENDANT'S LICENSE DEFENSE

/s/ Neil A. Benchell
Neil A. Benchell
nbenchell@devlinlawfirm.com
Timothy Devlin (#4241)
tdevlin@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

*Attorneys for Plaintiff*
*FireBlok IP Holdings, LLC*

DATED:      November 1, 2019

1

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    STATEMENT OF THE ISSUE/ISSUES TO BE DECIDED ............................................. 1

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 2

IV.    APPLICABLE LAW ...................................................................................................... 3

V.     ARGUMENT .................................................................................................................. 3

    A.     Hilti Has Failed To Produce Any Evidence Showing That It Has Continuously Purchased The Accused Product From Rectorseal Since 2006 .................................................. 4

        1.     There Are No Contracts For The Purchase Or Sale Of The Accused Products ........... 5

        2.     Hilti's Sales Spreadsheets Do Not Prove Hilti Has Purchased Anything From Rectorseal ..................................................................................................................... 6

        3.     There Are No Business Documents Supporting Hilti's Claimed License Defense ..... 7

        4.     Hilti's Own Leed Documentation Contradicts Its License Defense ........................... 8

    B.     Rectorseal's Communications With UL Contradicts Hilti's License Defense ................. 9

    C.     Rectorseal Other Actions Contradict Hilti's Claimed License Defense ........................ 11

VI.    CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996) ....................................................... 3

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994) ....................................................... 3

*GTX Corp. v. Kofax Image Prod. Inc.*, 571 F.Supp. 2d 742, 747 (E.D. Tex. 2008) ...................... 3

*Realtime Data, LLC v. T-Mobile USA, Inc.*, 936 F. Supp. 2d 795, 800-01 (E.D. Tex. March 28, 2013) ...................................................................................................................... 3

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1576 (Fed. Cir. 1997) ............... 3

**Statutes**

Fed. R. Civ. P. 56(c) ...................................................................................................... 3

## I.    INTRODUCTION

"RectorSeal will no longer be manufacturing the Fire[stop] Box Inserts for Hilti." (*See* August 1, 2008, electronic mail from RectorSeal, LLC's Melissa Schoenberg to UL, LLC's ("UL") Erin Wilson, attached hereto as Exhibit 1.)  Despite this 2008 admission, Defendant Hilti Inc. ("Hilti") maintains that it has been purchasing its Firestop Box Insert products ("the Accused Products") from RectorSeal, LLC ("RectorSeal") continuously since 2006, pursuant to the license between Plaintiff FireBlok IP Holdings, LLC ("FireBlok") and RectorSeal.    Therefore, Hilti argues, it serves as a complete defense to the patent infringement claims in this case; the so called "License Defense."

During the June 12, 2019 Scheduling Conference, the Court asked the parties to address whether Defendant Hilti Corp. has proven its License Defense, or identified the source of the Accused Products, before proceeding with the other substantive issues in the case.  *See* June 12, 2019 Initial Scheduling Order (Dkt. No. 16).  To that end, FireBlok conducted extensive discovery concerning Hilti's License Defense, but was unable to find any substantive proof that Hilti had been purchasing the Accused Products under the license between FireBlok and RectorSeal.  In fact, much of the evidence seems to indicate the contrary.  Thus, Hilti has not proven its License Defense by a preponderance of the evidence, and FireBlok respectfully asks the Court to proceed with the remaining substantive issues in the case.

## II.    STATEMENT OF THE ISSUE/ISSUES TO BE DECIDED

Hilti claims that it has been allegedly purchasing the Accused Products from RectorSeal continuously since 2006.  In 2011, FireBlok sued RectorSeal for patent infringement.  The parties settled the case, and entered into a license agreement whereby RectorSeal customers who purchase RectorSeal's Box Guard products are immune from liability for patent infringement.  ("the FireBlok License").  Thus, Hilti argues, the alleged purchase of the Accused Products falls under

1

the FireBlok License, the so-called License Defense, notwithstanding that RectorSeal ceased manufacturing the Accused Products for Hilti in August 2008.

The Court gave the parties until November 1, 2019, to obtain support for Hilti's License Defense, or the source of Hilti's Accused Products.    To date, Hilti has not provided any such evidence.  Therefore, FireBlok respectfully asks that the Court deny Hilti's License Defense and allow the substantive issues in this case to proceed.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Aside from the facts admitted by Hilti in its Answer, Affirmative Defenses and Counterclaims to Plaintiff's Complaint (Dkt. No. 10), the following facts are undisputed:

1.    FireBlok conducted an extensive multi-year prefiling investigation of Hilti's infringement of the FireBlok's U.S. Patent No. 6,252,167 ("the '167 patent");

2.    On June 10, 2010, FireBlok's predecessor in interest, Intumescent Technologies, LLC sued RectorSeal in the Northern District of Georgia for infringement of the '167 patent ("the RectorSeal Litigation");

3.    The RectorSeal Litigation was settled on January 14, 2011, when the parties entered into a Settlement and License Agreement which included the FireBlok License;

4.    Pursuant to the FireBlok License RectorSeal was allowed to sell its "Box Guard and Cover Guard products of RectorSeal under these trade name sand other trade names";

5.    On August 1, 2008, RectorSeal informed UL that "RectorSeal will no longer be manufacturing the Fire[stop] Box Inserts for Hilti.

6.    On January 6, 2009, RectorSeal informed UL that "the only product that [Hilti] buy[s] from [RectorSeal] is a small quantity of a small size putty stick;

7.    The putty stick is not the same product as the Accused Product;

8.    From August 1, 2008 until February 4, 2019, the Accused Products were not UL multiple listed with RectorSeal's Box Guard products;

9.    No contracts exist between Hilti and RectorSeal specifically naming the Accused Products;

10.    Hilti maintains no hard-copies of its financial documents.

2

## IV.    APPLICABLE LAW

Summary judgment should be granted when the moving party demonstrates that there is no genuine dispute of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.*, 247–48. A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*, 248. "Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *GTX Corp. v. Kofax Image Prod. Inc.*, 571 F.Supp. 2d 742, 747 (E.D. Tex. 2008) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994)).

A defendant must prove a license defense by a preponderance of the evidence. *See Realtime Data, LLC v. T-Mobile USA, Inc.*, 936 F. Supp. 2d 795, 800-01 (E.D. Tex. March 28, 2013)(defendant prove its license defense by a preponderance of the evidence); *see also, Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1576 (Fed. Cir. 1997)(requiring defendant to prove its license defense by a preponderance of the evidence.)

## V.    ARGUMENT

Defendant Hilti Corp. ("Hilti") advertises that Hilti's advantage is that it researches, develops and manufactures its own products. (*See* LEARN more about Hilti Firestop solutions - saving lives through innovation and education, https://www.youtube.com/watch? v=0PUcbVD7Slc (last visited Aug. 20, 2019)). Notwithstanding, Hilti claims that it has been purchasing its Accused Products from RectorSeal since 2006. (*See* Hilti, Inc.'s Answer, Affirmative Defenses and Counterclaims to Plaintiff's Complaint (Dkt. No. 10) at Counterclaim ¶

3

20.) Since RectorSeal has a license to manufacture and sell products that infringe FireBlok's '167 patent, Hilti argues that its sales of Firestop Box Inserts are covered under the RectorSeal license— the License Defense.

However, neither Hilti, nor RectorSeal have provided evidence that Hilti's products have been purchased from RectorSeal since 2006, let alone over the past six years during which Hilti was liable for infringing the '167 patent, nor whether these products fall under the FireBlok License. Instead, some evidence tends to show that Hilti may have purchased its products from RectorSeal in 2006, but ceased such purchases in 2008. Other evidence claims sales of Hilti's product from RectorSeal since 2008, but there is no proof that these products fall under the FireBlok License, and substantial evidence that these products do not. In any event there is no evidence that Hilti has been purchasing its products from RectorSeal continuously since 2006 pursuant to the FireBlok License, as Hilti claims. Thus, Hilti has failed to prove its License Defense by a preponderance of the evidence, or identify the source of the Accused Products during the relevant time.

### A.    Hilti Has Failed to Produce any Evidence Showing that it has Continuously Purchased the Accused Product from RectorSeal Since 2006

During its prefiling investigation, FireBlok sought evidence from Hilti supporting Hilti's claim that it has continuously purchased its Firestop Box Insert products from RectorSeal pursuant to the FireBlok License since 2006. Hilti repeatedly claimed that this is tantamount to demanding that Hilti prove a negative. Not so. To help Hilti, FireBlok suggested specific documents that would satisfy FireBlok about Hilti's claim. Although Hilti provided a voluminous number of documents, none provide any substantive proof to support Hiliti's claim. With no showing that Hilti had been purchasing its Accused Products from RectorSeal, and therefore Hilti was immune from patent infringement, FireBlok filed its Complaint.

4

At the start of this case, FireBlok again sought support for Hilti's License Defense by propounding discovery requests.   In response, Hilti produced virtually the identical set of documents as previously provided during the prefiling investigation, including the self-serving declarations from its Assistant General Counsel, Martin Schofield (*see* Hilti_000010-16, Dkt. No. 30-1[1]), and Riley Archer, RectorSeal's Vice President of Sales (Hilti_000008-9, Dkt. No. 30-29). These declarations, in particular, hold no probative weight, and, in fact, tend to disprove Hilti's claimed License Defense.   Even with the reproduction of these documents, nothing has changed in the intervening time to make these documents any more supportive of Hilti's License Defense.

    1.    **There are No Contracts for the Purchase or Sale of the Accused Products**

FireBlok requested that Hilti produce any contract between it and RectorSeal for the purchase of the accused products.  (*See* Plaintiff FireBlok IP Holdings, LLC's First Set of Requests for the Production of Documents and Things (1-35), attached hereto as Exhibit 2 ("RFPs") at Request No. 5.)  In response, Hilti provided a 2006 contract between Hilti and RectorSeal that Hilti claims is for the purchase of the Accused Products.  However, this "contract," which is entitled Terms and Conditions of Purchase, only sets out the terms and conditions RectorSeal must agree to before selling *any* of its products to Hilti.  (*See* 2006 Terms and Conditions Agreement, Hilti_000020-24, Dkt. No. 30-2).  Not surprisingly, this Terms and Conditions Agreement never mentions the Accused Products.  In fact, Hilti admits that there is *no* contract for the Accused Products.  (*See* Sanctions Motion at 2 ("There is no separate written contract or addendum between Hilti and RectorSeal that specifically identifies the Insert."))

---

[1] These same set of documents were also filed as part of Hilti's Motion for Sanctions Pursuant to Rule 11 (Dkt. No. 29) ("Sanctions Motion"), and marked with the same production numbers.  In the interest of keeping the docket clear, FireBlok will cite to those previously filed documents, where possible, rather than filing the same documents anew with this motion.

RectorSeal agrees that no contract exists naming the Accused Products.  (*See* Non-party RectorSeal LLC's Responses and Objections to Subpoena, attached hereto as Exhibit 3, at Response to Request No. 1 (responding to a request for contracts with Hilti for the manufacture and sale of the accused products, "After a diligent search, no responsive documents are in deponent's possession, custody or control."))  RectorSeal provided its own Terms and Conditions agreement, but from 2016, not 2006, and again without naming the accused products.  (*See* 2016 Terms and Conditions agreement, Rectoseal00001-15, attached hereto as Exhibit 4.)  The existence of these two separate agreements, with differing dates, and no mention of the Accused Products— indeed, no contract whatsoever—Hilti cannot assert that it ever had a contract to purchase the Accused Products from RectorSeal.

FireBlok also requested communications between Hilti and RectorSeal showing orders for the Accused Products.  In the absence of an actual contract, such communications would evidence ongoing sales of the Accused Products.  Hilti failed to provide any such documents when asked.  RectorSeal simply refused to produce such communications in response to the third-party subpoena.  (*See* Exhibit 3 at Response to Request No. 6.)

2. **Hilti's Sales Spreadsheets Do Not Prove Hilti Has Purchased Anything from RectorSeal**

Hilti also produced three unmarked spreadsheets, purporting to show (1) 2017 purchases from RectorSeal; (2) sales of the accused products from October 2016 to November 2017; and (3) purchases of the accused products from 2012 to 2017.  (*See* Hilti_000049-50, Hilti_000055 and Hilti_000065-67, Dkt. Nos. 30-12, 30-15 and 30-19.)  However, these three spreadsheets were prepared by Hilti's counsel, specifically for the purpose of this litigation, and not kept in the ordinary course of business, questioning the source and authenticity of the information.  Although

Hilti claims that this information comes from its online accounting system, there is no indication where *any* of this information came from.

Ironically, when asked for similar documents from RectorSeal, it produced the identical spreadsheet already provided by Hilti, again questioning the authenticity of these documents. The production of identical documents from both Hilti and RectorSeal also explains why Hilti's purchases match RectorSeal's sales exactly. (Compare Hilti_000065-67, Dkt. No. 30-19 with RectorSeal000017-19, attached hereto as Exhibit 5.) Notably, with the exception of this one document produced by both Hilti and RectorSeal, Hilti's alleged financial spreadsheets only cover 2016 and 2017 even though Hilti claims to have been purchasing the accused products since 2006.

### 3.     There are No Business Documents Supporting Hilti's Claimed License Defense

FireBlok also sought other business documents concerning the purchases of the individual products, such as purchase orders, invoices, shipping documents (*e.g.*, bills of lading, etc.), or payment records. (*See* RFPs, Ex. 2). But Hilti could not produce any actual documents since, as Hilti admits, it maintains no hard-copy documents. (*See* Declaration of Martin Schofield, HILTI_000010-16, Dkt. No. 30-1 at HILTI_000013 ("hard-copy documents are not maintained by Hilti.")) Thus, for example, rather than provide *real* purchase orders, Hilti provided "sample" purchase orders. (*See id.* (identifying the produced purchase orders as "sample Hilti purchase orders to RectorSeal for purchase of the Insert"); *see also*, Sample Purchase Orders, Hilti_000051-54, Dkt. Nos. 30-13, 30-14.) It is unclear whether these "sample" purchase orders, which are both dated 2017, represent any particular month, or just demonstrate what a purchase order might look like if one actually existed. Aside from these "sample" documents, there are no other financial documents—no invoices, no shipping records and no payment records—that would typically be part of continued sales of the Accused Products.

On October 30, 2019, over four months after FireBlok issued its third-party subpoena, RectorSeal produced invoices for alleged sales of the Accused Products to Hilti. The 680,000 units allegedly sold over 10 years, constitute only a small amount of the Accused Products sold by Hilti. According to a 2013 McGraw-Hill data service, in only eight states in 2013, there were 216,765 fire preventing gasket and inserts, including the Accused Products. (*See* McGraw-Hill data service spreadsheet, attached hereto as Exhibit 6.) Extrapolating to all 50 states, there would have been approximately 1,517,000 total gaskets and inserts sold nationwide by population. At that time, Hilti held 50% of the market in the United States for gaskets and inserts. Thus, in 2013 alone, Hilti would have been responsible for selling over three quarters of a million Accused Products. Yet, the invoices produced by RectorSeal showed that it only sold Hilti 63,000 Accused Products in 2013, a fraction of what would be needed.

If the sales reflected in RectorSeal's invoices are for actual sales, they only represent a small portion of the number of Accused Products Hilti's sells, indicating that RectorSeal is only *one* the sources for Hilti's Accused Product. Moreover, as explained below, these products are not the Box Guard products allowed to be sold under the FireBlok License. Therefore, these late-produced invoices do not support Hilti's License Defense, and only evidence a small amount of the Accused Products sold by Hilti.

4.    **Hilti's Own Leed Documentation Contradicts its License Defense**

On its website, Hilti provides a Green Building Materials Certification form in support of Hilti's LEED certification. (*See* Green Building Materials Certification form, attached hereto as Exhibit 7). The form states, "This document current as of the date of publication." (*See id.* at 2). Although the document is undated, the form appears to have been revised in 2018 (*see id*. at 1), thus, presumably the information is current as of, at

least, 2018. The form includes a variety of information for each product including the location of manufacture, and the vendor or manufacturer. For the Accused Products (line 31), Hilti states that the products are from Hilti and manufactured in Texas. Nowhere on this document does it ever mention RectorSeal is the manufacturer of the Accused Product.

With no contract for the Accused Products, no purchase orders, invoices for only some of the Accused Products, no shipping documents, and no communications showing additional orders for the Accused Products, Hilti has failed to prove its License Defense by a preponderance of the evidence, or provide evidence for the source of the Accused Products. Moreover, its own documentation seems to indicate that Hilti is manufacturing the Accused Products.

### B.    RectorSeal's Communications with UL Contradicts Hilti's License Defense

On March 16, 2006, RectorSeal and Hilti sought to have the Accused Products multiple listed under RectorSeal's UL certification. UL tests products to determine if they satisfy certain industry standards. "Multiple Listing Service is a situation where a company who does not make the product wants to have their name appear on the product and the product certified [under UL standard] for a different company." (October 29, 2019, 30(b)(6) deposition of UL, LLC, Rough Transcript, attached hereto as Exhibit 8 ("UL Rough Tr.") at 124:2-5.) UL identifies the products covered under multiple listing arrangements through documents called "correlation sheet." (*See id.* at 155:2-5). Correlation sheets are kept for all products that are multiple listed between companies. (*See, e.g.*, correlation sheets for RectorSeal and Hilti products, UL000604-612 ("Correlation Sheets"), attached hereto as Exhibit 9.) From the correlations sheets for RectorSeal and Hilti, it appears that starting in 2006, RectorSeal was authorized to affix the UL Certification Mark on its products being sold to Hilti as the Accused Products. (*See id*. at UL000608 (showing

the May 15, 2006 correlation of Hilti's Firestop Box Inserts with RectorSeal's Metacaulk products).)

On August 1, 2008, RectorSeal requested that Hilti's Accused Products no longer be multiple listed with RectorSeal's products because, "RectorSeal will no longer be manufacturing the Fire[stop] Box Inserts." (*See* Ex. 1). In response, UL removed the multiple listing certification for Hilti's Accused Product on the same day. (*See* Correlation Sheets at UL000607 (indicating that the multiple listing for the Accused Products was removed, and no products remained multiple listed between RectorSeal and Hilti); *see also* UL Rough Tr. at 168:20-169:11).)

It appears that Hilti attempted to gain access to the UL information about RectorSeal's products in January 2009, but RectorSeal refused to allow Hilti access to that information. Specifically, RectorSeal told UL, "The only product that [Hilti] buys from us is a small quantity of a small size putty stick." (*See* January 6, 2009 electronic mail from RectorSeal's Eva Ackerman to UL, attached hereto as Exhibit 10.) The putty stick referenced in the email—the only product being sold to Hilti at that time—is not the Accused Product.

It was not until January, 17, 2019, that RectorSeal asked UL to have the Accused Products multiple listed with its own Metacaulk products. (*See* Janaury 17, 2019, electronic mail from RectorSeal's Melissa Schenberg to UL's Lisa Capuano.) This is also reflected in the Correlation Sheets. (*See* Correlation Sheets at UL000605 (showing the Accused Products multiple listed with RectorSeal's Metacaulk Box Guard product).)

Although RectorSeal makes clear that starting in 2008 it was no longer manufacturing the Accused Products, it is unclear when it resumed manufacturing of the Accused Products. Indeed, UL confirms it is possible that from 2008, when RectorSeal asked UL to close the multiple listing for the Accused Products, and 2019, when RectorSeal asked that the products be multiple listed again, these two products were not the same, as Hilti claims, and its License Defense requires.

10

(*See* UL Rough Tr. at 187:8-12).  What is known is that in 2008, and again in 2009, RectorSeal

confirmed that it had ceased manufacturing and selling the Accused products to Hilti.  There is no

other evidence indicating when, or if, RectorSeal ever began selling Hilti the Accused Products.

### C.   RectorSeal Other Actions Contradict Hilti's Claimed License Defense

While Hilti relies on its License Defense to avoid liability for infringement, RectorSeal's

statements and actions seem to indicate that Hilti may not be entitled to is License Defense.  In its

recently filed lawsuit against FireBlok, RectorSeal alleges,

> In 2016, Hilti, Inc. ("Hilti"), a long-standing customer of RectorSeal, entered into
> a Terms and Conditions of Purchase Contract with RectorSeal (the "Hilti Contract")
> for the purchase of, among other items, the MetaCaulk Box Guard under the name
> Firestop Box Insert (the "Firestop Box Insert") through a private label arrangement.
> The manufacture and sale of the Firestop Box Insert by RectorSeal and the
> subsequent resale of this product by Hilti are expressly permitted under the terms
> of the License Agreement.

(*See* Plaintiff RectorSeal's First Amended Complaint, RectorSeal, LLC v. FireBlok IP Holdings,

LLC, Civil Action No 4:19-cv-00504 (E.D. Tex. August 14, 2019) ("RectorSeal Litigation")

attached hereto as Exhibit 11, at ¶ 11 (emphasis added)).  RectorSeal—the company Hilti claims

it has been purchasing the Accused Products from all these years under the FireBlok License—

alleges, under its own Rule 11 obligation that Hilti has only been purchasing the accused products

since 2016, not 2006 as Hilti claims.  Thus, Hilti would not be entitled to the protections against

infringement allegedly afforded by its License Defense

In its Motion to Quash the Rule 45 subpoena issued on UL (Dkt. No. 21), RectorSeal

argued, in part, that production of UL's documents may disclose "*Hilti and* RectorSeal's research

and development of products in direct competition with that manufactured by FireBlok." (Motion

to Quash at (Dkt. No. 21) at 8 and 10 (emphasis added)).[2]  To the extent that Hilti and RectorSeal are working together to develop the Accused Products, rather than Hilti purchasing them from RectorSeal as Hilti claims, then Hilti's claimed License Defense fails.  Rather than purchasing the accused products under the license between FireBlok and Rectorseal, it would appear that Hilti and RectorSeal are working together to develop the accused products.

In addition, under the 2006 Terms and Conditions Agreement for the purchase of the accused products, RectorSeal is required to indemnify Hilti for patent infringement actions, such as this litigation.  (*See* 2006 Terms and Conditions Agreement, Hilti_000020-24, Dkt. No. 30-2 at HILTI_000021 ("Seller shall hold Buyer harmless and indemnify and defend Buyer from all costs, expenses (including attorney's fees), judgments or money damages arising from a patent infringement action brought against Buyer for goods subject to this agreement.") (emphasis added).)  To the extent this 2006 agreement covers the Accused Products as Hilti claims, RectorSeal would be required to indemnify Hilti.  Yet, RectorSeal has not stepped into Hilti's shoes in this case, questioning whether the 2006 agreement actually covers the Accused Products.

The license between FireBlok and RectorSeal requires RectorSeal to sell products that were marked with FireBlok's patent number.  (*See* Settlement and License Agreement, HILTI_000030-34, Dkt. No. 30-5 at HILTI_000032.)  Had RectorSeal been selling products to Hilti at the time the license was entered into in 2011, it would have been required to inform Hilti then of the need to provide labels with FireBlok's patent number.  But, RectorSeal only told Hilti of the need to add FireBlok's patent number to Hilti's label in 2017, not 2011.  (*See* HILTI_000035-36, Dkt. No. 30-6 at HILTI_000035.)  This indicates that, at best, the first sale of the accused products under

---

[2] Ironically, UL is unaware of any research testing it conducts for either Hilti's or RectorSeal's products (*see* UL Rough Tr. at 100:13-18), nor is it aware of testing that it conducts that is part of *any* product's research and development (*see id*. at 102:3-5).

the license between FireBlok and RectorSeal occurred in 2017, well after Hilti was subject to liability for patent infringement.

The Court is well aware of RectorSeal's admission that the products it sells to Hilti is different from its own products.[3] On August 21, 2019, during arguments over RectorSeal's non-party Motion to Quash Rule 45 subpoenas issued on RectorSeal and UL, RectorSeal admitted that the UL documents may show different chemical compositions of Hilti's and RectorSeal's products. (*See* August 21, 2019 Motion Hearing Transcript, Dkt. No. 36 ("Hearing Tr.") at 12.) RectorSeal explained the reason for this difference was that RectorSeal sells Hilti a product that is different from the product RectorSeal takes to market on its own. (*See id.* at 12.) In other words, RectorSeal does not sell Hilti the identical product that it markets under the Box Guard trade name. (*See also*, Hearing Tr. at 28 ("RectorSeal tested its products based on unlicensed products" not those sold to Hilti.)).

RectorSeal also claimed that Hilti and RectorSeal are not claiming that their products are identical. (*See* Hearing Tr. at 26 ("You know, Mr. Benchell, I think, misrepresented that both Hilti and Rector -- RectorSeal are claiming that their products are identical. They're not.")) This admission, made to this Court under RectorSeal's attorney's Rule 11 obligation, completely undermines Hilti's License Defense which is based on Hilti's claim that the products are identical. If true, then Hilti has *not* been purchasing products that fall under the FireBlok License, and Hilti's License Defense necessarily must fail.

Consistent with RectorSeal's attorney's admissions to this Court, in its Motion to Dismiss FireBlok's counterclaims in the RectorSeal Litigation, RectorSeal implied that the products it sells

---

[3] This admission jeopardizes Hilti's multiple listing with RectorSeal's products as the products are required to be identical. (*See* UL Rough TR. at 125:19-22 (explaining that aside from the markings on the products, the products must be indistinguishable).)

to Hilti do not fall under the license between FireBlok and RectorSeal.  (*See* RectorSeal Motion to Dismiss, RectorSeal Litigation, Dkt. No. 13, attached hereto as Exhibit 12, at 7-8.)  There, RectorSeal argued that "RectorSeal's alleged sale of other products [the Accused Products] simply does not implicate the Parties' rights under the [FireBlok License]."  (*Id*. at 7.)  Again, if RectorSeal denies that its sale of Accused Products fall under the FireBlok license, then Hilti's License Defense must fail.

These admissions from RectorSeal are important, not only because they directly contradict Hilti's claim, but also because the FireBlok License requires RectorSeal to only sell the RectorSeal products.  (*See* Settlement and License Agreement § 1.2, HILTI_000030-34, Dkt. No. 30-5 at HILTI_000030 (defining the products allowed to be sold under the license as, "the Box Guard and Cover Guard products of RectorSeal under these trade names or other trade names."))  Since RectorSeal now admits that it was not selling the same product to Hilti as its own Box Guard products, those products sold to Hilti fall outside the license agreement, and Hilti cannot claim protection from infringement based on its License Defense.

RectorSeal—Hilti's alleged source for the Accused Products—admits that at best it has not been selling its products consistently since 2006.  In fact, RectorSeal made clear in 2008 and 2009 that it was no longer selling the Accused products to Hilti.  Even after RectorSeal allegedly resumed selling Hilti the Accused Product, RectorSeal admits that the product sold to Hilti is not the same as RectorSeal's own product, contrary to the requirements of the license between FireBlok and Hilti.

## VI.    CONCLUSION

For the foregoing reasons, FireBlok respectfully requests that this Court grant FireBlok's Motion for Summary Judgment Denying Hilti's License Defense, and allow the case to proceed accordingly.

Dated: November 1, 2019

/s/ Neil A. Benchell
Neil A. Benchell
nbenchell@devlinlawfirm.com
Timothy Devlin (#4241)
tdevlin@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19806
Telephone: (302) 449-9010

*Attorneys for Plaintiff*
*FireBlok IP Holdings, LLC*

'

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on November 1, 2019.

/s/ Neil A. Benchell
Neil A. Benchell
nbenchell@devlinlawfirm.com
Timothy Devlin (#4241)
tdevlin@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19806
Telephone: (302) 449-9010

*Attorneys for Plaintiff*
*FireBlok IP Holdings, LLC*

16