# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **FIREBLOK IP HOLDINGS, LLC** | § | **CIVIL ACTION NO.: 2:19-cv-23** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **HILTI, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## HILTI, INC.'S MOTION FOR SUMMARY JUDGMENT
## OF NON-INFRINGEMENT FOR LICENSE AND RELEASE

# TABLE OF CONTENTS

**Page(s)**

I.      STATEMENT OF ISSUES ................................................................................ 2

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS .................................... 2

      A.      RectorSeal provides the accused product. ............................................. 2

      B.      RectorSeal and its customers are licensed to the asserted patent. ......... 4

      C.      FireBlok refuses to believe Hilti or RectorSeal. ................................... 5

III.    LEGAL STANDARD ........................................................................................ 9

IV.     ARGUMENT ................................................................................................... 11

      A.      FireBlok has no evidence to support its allegations of infringement ..... 11

      B.      All of the evidence supports Hilti's immunity from FireBlok's allegations of infringement ............................................................................... 14

            1.      The License provides broad immunity for RectorSeal's customers, like Hilti. ..................................................................................... 14

            2.      Hilti purchased the Insert exclusively from RectorSeal. ............... 15

            3.      The License covers the Firestop Box Insert. ................................ 16

V.      CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accolade Sys. LLC v. Citrix Sys., Inc.*,
  6:07-cv-48, 2009 WL 1514426 (E.D. Tex. 2009)....................................................10

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
  466 F.3d 1000 (Fed. Cir. 2006)...........................................................................19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................10

*Cyrix Corp. v. Intel Corp.*,
  879 F. Supp. 666 (E.D. Tex. 1995), *aff'd*, 77 F.3d 1381 (Fed. Cir. 1996) .............10

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) .............................................................................10

*Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.*,
  220 F.3d 679 (5th Cir. 2000) .............................................................................10

*Exigent Tech. Inc. v. Atrana Solutions, Inc.*,
  442 F.3d 1301 (Fed. Cir. 2006)..........................................................................11

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
  849 F.3d 1034 (Fed. Cir. 2017)..........................................................................11

*Intel Corp. v. Negotiated Data Solutions, LLC*,
  699 F. Supp. 2d 871 (E.D. Tex. 2010) ................................................................10

*Intel Corp. v. ULSI Corp.*,
  995 F.2d 1566 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1092 (1994)....................17

*McDuffie v. Criterion Cas. Co.*,
  449 S.E.2d 133 (Ga. Ct. App. 1994) ...................................................................18

*Novartis Corp. v. Ben Venue Labs., Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001)..........................................................................11

*STMicroelectronics, Inc. v. Sandisk Corp.*,
  4:05-cv-45, 2007 WL 951655 (E.D. Tex. Mar. 26, 2007).....................................10

**Statutes**

35 USC § 286.................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 56.........................................................................................................10

FireBlok's entire case is pinned on its contention that two companies, Hilti and RectorSeal, have been lying to FireBlok, to each other, to third parties, and to the public, and that they have been doing so since well before even the potential for a patent dispute existed. The only question currently before the Court is whether, during all relevant times, Hilti sourced the accused product from, and only from, RectorSeal. The answer is yes, and no evidence exists to suggest otherwise.

Fundamentally, FireBlok alleges Hilti and RectorSeal must have, over the course of 13 years, lied in their sworn declarations, fabricated extensive sales documentation out of thin air, lied to UL and FM, and lied to the consuming public. Despite receiving substantial evidence to the contrary, FireBlok filed suit anyway, alleging that "[g]iven the number of substantial differences between RectorSeal's Metacaulk product . . . and Defendant's product, Defendant is not purchasing the Metacaulk product from RectorSeal as its own product." (Cmplt., Dkt. No. 1 at ¶ 58.) That is not true.

FireBlok has since asserted two new reasons why the accused products are not licensed, neither of which has any merit. FireBlok also, completely contrary to its claims herein that the accused product **does** infringe its patent, filed suit against Hilti in the Northern District of Illinois, alleging the accused product **does not** infringe the patent. Continuing its practice of harassment, and again completely contrary to its claims herein that RectorSeal **does not provide** the Inserts, FireBlok seeks recovery from RectorSeal in a separate Eastern District of Texas suit, accusing RectorSeal of, in fact, **providing** the accused product to Hilti. FireBlok's misuse of the judicial process in three Courts, and its ongoing abuse of Hilti and RectorSeal, must stop. Summary judgment, and sanctions,[1] are warranted.

---

[1] (*See* Hilti's Motion for Sanctions, Dkt. No. 29; Order Deferring Ruling on Motion for Sanctions, Dkt. No. 49.)

## I.    STATEMENT OF ISSUES

A patentee is barred from seeking damages for a party's use or sale of a product that the patentee or its predecessor-in-interest has already licensed. FireBlok's predecessor licensed the asserted patent to RectorSeal, Hilti's sole supplier of the accused product, under an agreement that released all prior claims and granted immunity for infringement "to any person or entity purchasing or who has purchased a RectorSeal Product either directly from RectorSeal or through intermediary vendors." Is Hilti therefore entitled to summary judgment of non-infringement?

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    RectorSeal provides the accused product.

1.    Plaintiff FireBlok IP Holdings, LLC ("FireBlok") accuses the Defendant Hilti, Inc. ("Hilti") accused product (the Hilti Firestop Box Insert, or "Insert") of infringing the '167 Patent.[2] (Dkt. No. 1 at ¶¶ 22, 26.)

2.    The Insert is "designed for easy installation inside of outlet and switch boxes to provide protection in fire-rated assemblies." (Dkt. No. 1-2.)

3.    The Insert comes in three sizes, depending on the box in which it is installed. (*Id*.)

4.    Rather than manufacture the Insert itself, Hilti purchases (and has always purchased) its Insert from manufacturer RectorSeal Corporation ("RectorSeal"). (Schofield Dec., Dkt. No. 29-1 at ¶ 5.)

5.    RectorSeal sells the Insert under the tradename Metacaulk Box Guard (the "Box Guard"). (Dkt. No. 1-3.)

6.    The Insert and Box Guard are physically identical and come in the same three sizes:

---

[2] The '167 Patent expired on February 3, 2019.

| Hilti Insert (Dkt. No. 1-2) | | RectorSeal Box Guard (Dkt. No. 1-3) | |
|---|---|---|---|
| **Technical Data** | | Sizes (Approx.) | |
| Dimensions | 1 13/16" x 2 13/16" x 1/4" | Single box: | |
| | (for use with 2" x 4" boxes) | | 1 13/16" x 2 13/16" x 1/4" |
| | 3 11/16" x 3 3/4" x 1/4" | | 47 mm X 71 mm x 6 mm |
| | (for use with 4" x 4" boxes) | Double box (two sizes) | |
| | 4 3/8" x 4 3/8" x 1/4" | 1) 3 11/16" x 3 3/4" x 1/4" | |
| | (for use with 4 11/16" x 4 11/16" boxes) | 94 mm x 95 mm x 6 mm | |
| | | 2) 4 3/8" x 4 3/8" x 1/4" | |
| | | 111 mm x 111 mm x 6 mm | |
| Color | Black | Color | Black |

7.     The datasheets for the Insert and Box Guard advertise the same certifications:



8.     The size, specifications, and certifications are the same because these products are the same and are provided by an identical supplier: RectorSeal. (Schofield Dec., Dkt. No. 29-1 at ¶ 5; 3-8-2016 Ltr. from Jones, Dkt. No. 29-3.)

9.     RectorSeal signed a Terms and Conditions of Purchase contract with Hilti in 2006 that covers general business terms applicable to all products Hilti purchases from RectorSeal. (Schofield Dec., Dkt. No. 29-1 at ¶ 4; Hilti-Rectorseal T&C, Dkt. No. 29-2.)

10.     There is no separate written contract or addendum between Hilti and RectorSeal that specifically identifies the Insert. (Schofield Dec., Dkt. No. 29-1 at ¶ 4.)

11.     As early as 2006, Hilti began purchasing the Insert from RectorSeal. (*Id.* at ¶ 5.)

12.    Hilti has never manufactured the Insert nor purchased the Insert from any other source. (*Id.*)

13.    Hilti's only source for the Insert, the only accused product, is and always has been RectorSeal. (*Id.*)

**B.    RectorSeal and its customers are licensed to the asserted patent.**

14.    FireBlok's predecessor in interest, Intumescent Technologies, LLC ("Intumescent"), sued RectorSeal for infringement of the '167 Patent on June 10, 2010.[3] (Cmplt., Dkt. No. 1 at ¶ 15.)

15.    RectorSeal and Intumescent entered into a Settlement and License Agreement (the "License") effective January 14, 2011. (Dkt. No. 29-5.)

16.    Under the License, RectorSeal agreed to pay Intumescent a "non-refundable total payment" of $35,000 and "a one-time licensing fee" of $40,000. (*Id.* at ¶¶ 4.1, 4.3.)

17.    "In consideration of receipt of the additional sum set forth in Paragraph 4.3 [], Intumescent [] grant[ed] to RectorSeal and its Affiliates a non-exclusive, irrevocable but non-transferable license (except as provided in paragraph 6.4)[4] under the Intumescent Patents to import, make, have made, use, lease, offer to sell, sell or otherwise dispose of the RectorSeal Products." (*Id.* at ¶ 4.2.)

18.    The term RectorSeal Products "means the Box Guard and Cover Guard products of RectorSeal under these trade names or other trade names." (*Id.* at ¶ 1.2.)

19.    The License granted Intumescent the right to transfer its patents, but the "Agreement shall be binding upon and insure to the benefit of Intumescent's successors and

---

[3] Intumescent also sued Specified Technologies, Inc. for infringement of the '167 Patent. (Cmplt., Dkt. No. 1 at ¶ 16.) Hilti, however, was never sued by Intumescent.
[4] Paragraph 6.4 provides the circumstances under which RectorSeal may transfer the license. (*Id.* at ¶ 6.4.)

assigns." (*Id.* at ¶ 6.5.)

20.    The License released all prior claims and granted immunity for infringement of the '167 Patent. (*Id.* at ¶¶ 3.2, 4.4.)

21.    Paragraph 3.2 released all claims that Intumescent "had or may have had" against Rectorseal "at any time up to and including [the] Effective Date" and "forgives and releases the manufacturers, customers and intermediate vendors of RectorSeal for any infringement of the Intumescent Patents commensurate with the releases herein to RectorSeal." (*Id.* at ¶ 3.2.)

22.    Paragraph 4.4 "grants to any person or entity purchasing or who has purchased a RectorSeal Product either directly from RectorSeal or through intermediary vendors, or subsequently obtains or uses such product, immunity from suit for infringement of the Intumescent Patents for its use or resale of such product." (*Id.* at ¶ 4.4.)

23.    The paragraph goes on to emphasize, "No payment or royalty obligation shall be due from any person or entity under this paragraph." (*Id.*)

24.    The License required RectorSeal to begin marking its products when it reordered labels. Paragraph 4.6 states, "RectorSeal will mark RectorSeal Products with a label which states 'U.S. Patent No. 6,252,167'." (*Id.* at ¶ 4.6.)

25.    This requirement applied upon "the exhaustion of inventory of labels and upon the reordering of labels for RectorSeal Products." (*Id.*)

26.    The License is "governed by, construed and enforced in accordance with the laws of the State of Georgia." (*Id.* at ¶ 6.9.)

27.    The agreement also allowed the court from the underlying litigation to retain jurisdiction over the parties to enforce the License or remedy any alleged breach. (*Id.*)

**C.    FireBlok refuses to believe Hilti or RectorSeal.**

28.    FireBlok first contacted Hilti regarding alleged infringement of the '167 Patent on

March 1, 2016. (Cmplt., Dkt. No. 1 at ¶ 33.)

29.    Hilti immediately contacted RectorSeal, who responded on Hilti's behalf on March 8, 2016, and stated that RectorSeal provides the Box Guard to Hilti under the trade name "Firestop Box Insert." (Schofield Dec., Dkt. No. 29-1 at ¶¶ 6–7; 3-8-2016 Ltr. from Jones, Dkt. No. 29-3.)

30.    RectorSeal also stated that the Insert falls under the RectorSeal-Intumescent License and that, under ¶¶ 3.2 and 4.4, FireBlok has no patent infringement claim against Hilti. (*Id.*)

31.    In January 2018, after FireBlok again contacted Hilti and threatened suit, Hilti provided: (1) a sworn affidavit (Dkt. No. 29-11); (2) documents reflecting purchases of the Insert from RectorSeal in 2017 (Dkt. No. 29-12); (3) sample Hilti purchase orders to RectorSeal for purchase of the Insert (Dkt. Nos. 29-13, 29-14); and (4) documents reflecting Hilti sales of the Insert from October 2016 to November 2017 (Dkt. No. 29-15). (Schofield Dec., Dkt. No. 29-1 at ¶¶ 12–13.)

32.    The sworn affidavit stated that Hilti had been selling the Insert since approximately 2006, only purchased the Insert from RectorSeal, and did not manufacture the Insert itself. (Dkt. No. 29-11.)

33.    The other documents showed that the quantity of Inserts Hilti purchased from RectorSeal was approximately the same as Hilti's sales to its customers. (Dkt. Nos. 29-12, 29-13, 29-14, 29-15.)

34.    Hilti explained that it does not maintain hard-copy records and that the documents provided therefore reflected raw data retrieved from Hilti's data management system, which maintains data on a running 5-year basis. (Schofield Dec., Dkt. No. 29-1 at ¶ 13; 1-26-2018 Email from Schofield, Dkt. No. 29-16.)

35.     On November 7, 2018, Hilti sent FireBlok its purchase data dating back to mid-2012. (11-7-2018 Email to Benchell, Dkt. No. 29-18; Hilti 2012-2016 Pur. Hist., Dkt. No. 29-19.) FireBlok continued to insist on more documentation.

36.     In January 2019, Hilti sent FireBlok the 2006 initial UL[5] application for the Firestop Box Inserts (Dkt. No. 29-21) and informed FireBlok that because the Insert is a "multiple-listed" product, Hilti would not be issued the remaining UL documents FireBlok requested. (Jan. 2019 Emails, Dkt. No. 29-22.)

37.     FireBlok filed this lawsuit on January 23, 2019, alleging infringement of the '167 Patent and fraudulent misrepresentation based on Hilti's assertion that the accused Inserts fall under the License. (Dkt. No. 1.)

38.     On March 8, 2019, Hilti provided FireBlok with a declaration from Mr. Schofield, Assistant General Counsel, which included 26 exhibits relating to the Insert. (Dkt. No. 29-1.)

39.     Hilti also provided FireBlok with a declaration from RectorSeal, which stated, "The Insert is the identical product sold by Rectorseal as its Metacaulk® Box Guard™, with the only difference being the Insert is supplied with Hilti packaging." (RectorSeal Dec., Dkt. No. 29-29.)

40.     On March 15, 2019, FireBlok rejected Hilti's request to dismiss the lawsuit, alleging that the lack of marking on the Inserts sold prior to October 2017 made those products unlicensed. (3-15-2019 Letter from Benchell, Dkt. No. 29-30.)

41.     On April 10, 2019, Hilti wrote to confirm that FireBlok's lawsuit was based on two theories:

1.   "Any products sold without being properly marked are not licensed products," and

---

[5] Underwriters' Laboratories ("UL") is a global independent safety science company that "support[s] the production and use of products which are physically and environmentally safe" and "work[s] with integrity and focus on quality to enhance the trust conveyed by [its] certification marks and services." (https://www.ul.com/about/mission.)

2.  At least some of the accused Inserts are not manufactured by RectorSeal.

(4-10-2019 Letter to Benchell, Dkt. No. 29-31.)

42.    On April 16, 2019, FireBlok confirmed these two theories. (4-16-2019 Letter from Benchell, Dkt. No. 29-32.)

43.    On June 12, 2019, this Court held a Scheduling Conference and ordered resolution of Hilti's Licensing Defense before moving forward with FireBlok's patent case. (Dkt. No. 16.)

44.    In particular, the Court ordered the parties to complete any discovery regarding the defense and "to file any motions regarding the Licensing Defense, or the source of the accused products, by not later than November 1, 2019." (*Id.*).

45.    On June 13, 2019, FireBlok served 35 Requests for Production and 3 Interrogatories on Hilti. (RFPs, Dkt. No. 29-34; ROGs, Dkt. No. 29-35.)

46.    Hilti responded to these discovery requests on July 15, 2019. (RFP Responses, Dkt. No. 29-36; ROG Reponses, Dkt. No. 29-37.)

47.    On June 20 and 28, 2019, FireBlok served subpoenas on RectorSeal; UL, LLC; and FM Approvals.[6]

48.    On July 19, 2019, UL produced an April 13, 2010 email from Hilti stating that RectorSeal manufactures the Insert. (UL000096, Dkt. No. 29-39.)

49.    On July 26, 2019, RectorSeal produced sales data (RectorSeal000017-19, Dkt. No. 29-40) matching the purchasing history Hilti provided (Hilti 2012-2016 Pur. Hist., Dkt. No. 29-19).

50.    On September 6, 2019, FM approvals produced a July 10, 2006 private labeler

---

[6] "FM Approvals is a third-party global testing laboratory and certification agency . . . [that] test[s] and certif[ies] products and services that meet [its] rigorous property loss prevention standards for use in commercial and industrial facilities." (https://www.fmapprovals.com/about-fm-approvals.)

agreement signed by RectorSeal and Hilti. (Ex. 1, FMA_0000264–71.)

51.    The FM private labeler agreement identifies the Hilti Firestop Box Insert as a private label version of manufacturer RectorSeal's Metacaulk Box Guard. (*Id.*)

52.    On October 29, 2019, UL representative Robert Pollock testified that UL had no reason to believe the Insert and Box Guard were different products:

> **Q:** Does UL have any reason to believe that Hilti's Firestop Box Insert and RectorSeal Metacaulk Box Guard are in any way different?
> **A:** No.
> **Q:** You mentioned that you reviewed a bunch of documents to prepare for this deposition; right?
> **A:** Yes.
> **Q:** Based on what you reviewed, did you see any evidence to indicate that Hilti's Firestop Box Insert is in any way different from the Metacaulk Box Guard of RectorSeal?
> **A**: No.

(Ex. 2 at 184:5–16.)

53.    On October 30, 2019, RectorSeal provided FireBlok with a supplemental production including 225 pages of Insert invoices from February 2008 to October 2017. (Ex. 3-D.)

54.    On November 1, 2019, RectorSeal submitted a declaration from Eva Ackerman, Vice President of Research & Technology, who has been with RectorSeal since 1989. (Ex. 3, RectorSeal Ackerman Dec.) Ms. Ackerman provided details regarding RectorSeal's correspondence with UL in 2008–09 and once again confirmed that RectorSeal sells Hilti the Insert, which is same product RectorSeal sells in the market as the Box Guard. (*Id.*)

## III.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the party seeking summary judgment demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Although the Court must draw all reasonable inferences in favor of the non-moving party, mere conclusory allegations are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

A patentee is barred from seeking damages for a party's use or sale of a product that the patentee has already licensed. Summary judgment is appropriate on license issues where the patentee is unable to set forth specific facts as to why the license should not apply. *See e.g., Cyrix Corp. v. Intel Corp.*, 879 F. Supp. 666, 668 (E.D. Tex. 1995), *aff'd*, 77 F.3d 1381 (Fed. Cir. 1996); *Accolade Sys. LLC v. Citrix Sys., Inc.*, 6:07-cv-48, 2009 WL 1514426, at *3–5 (E.D. Tex. 2009) (granting in part summary judgment that accused infringer was released from plaintiff's claims of infringement where accused infringer was a "customer," "user," and "Authorized Third Party" under a plaintiff's license with third party); *Intel Corp. v. Negotiated Data Solutions, LLC*, 699 F. Supp. 2d 871 (E.D. Tex. 2010) (finding license agreement protected accused infringer against claims of infringement "based upon sales by third parties incorporating [its] products"); *STMicroelectronics, Inc. v. Sandisk Corp.*, 4:05-cv-45, 2007 WL 951655 (E.D. Tex. Mar. 26, 2007) (recommending grant of summary judgment on accused infringer's license defenses). The interpretation of a contract, and thus whether a license covers a certain product or service, is a legal issue for a court to decide. *See Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000) ("We review the district court's interpretation of the contract *de novo,* as that involves determinations of legal questions.").

Hilti "may meet its initial responsibility either by providing evidence that would preclude

a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). "[N]othing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Exigent Tech. Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).

## IV.    ARGUMENT

### A.    FireBlok has no evidence to support its allegations of infringement.

There is consistent, significant evidence the Insert is licensed, and FireBlok cannot offer any evidence to the contrary because none exists. "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis*, 271 F.3d at 1046. Hilti put forth evidence that RectorSeal supplied every Insert, and FireBlok's failure to put forth any competing evidence warrants summary judgment of non-infringement. FireBlok's only basis to contradict the evidence is its attorney's argument that Hilti and RectorSeal are lying. The law is clear, however, that "[a]ttorney argument is not evidence." *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) (citing *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009)).

In addition to the evidence provided by Hilti, which is addressed below, the third-party evidence also establishes that the source of the Insert is and always has been RectorSeal, a company that FireBlok admits is licensed to the asserted patent. For example, UL produced an email from April 13, 2010, where Hilti states that RectorSeal sources the Insert (Dkt. No. 29-39),

11

and FM Approvals produced a private labeler agreement from July 10, 2006, where RectorSeal and Hilti identify the Insert as a private label version of the Box Guard (Ex. 1). UL also recently testified that it has no reason to believe the Insert and RectorSeal's Metacaulk Box Guard are in any way different. (Ex. 2 at 184:5–16.) FireBlok attempts to undercut this third-party evidence by claiming, "All information about the UL multiple listing is supplied by either Hilti or RectorSeal . . . [and] is merely a repetition of what Hilti and RectorSeal told UL." (FireBlok's Rule 11 Sur-Reply, Dkt. No. 40 at 1, n.1.) Even if true, these documents establish that ***Hilti and RectorSeal both represented the Insert was manufactured by RectorSeal well before FireBlok accused Hilti of patent infringement***. (*See* Cmplt., Dkt. No. 1 at ¶ 33.) Indeed, Hilti and RectorSeal's initial 2006 representations predate Intumescent's 2010 suit against RectorSeal, which resulted in the 2011 License. (*See* 2010-04-13 Email (UL000096), Dkt. No. 29-39; 2006-07-10 Private Labeler Agreement, Ex. 1.) RectorSeal and Hilti had no reason to misrepresent the source of the Insert before the License even existed, making FireBlok's attempt to undercut this evidence ring hollow.

FireBlok may point to a 2008 email where RectorSeal asked UL to close the Multiple Listing and represented it would no longer be manufacturing the Insert for Hilti. (Ex. 4 at UL000222.)[7] First, this email is irrelevant to the dispute at hand. Since Fireblok filed suit on January 23, 2019, the relevant damages period extends, at most, to 2013. *See* 35 USC § 286. Second, several months after the Multiple Listing was withdrawn, RectorSeal attempted to reinstate the Multiple Listing and told UL it was selling the Insert to Hilti. (Ex. 5 at UL000252 ("I have received the L14A agreement for RectorSeal and Hilti Inc. I am working on getting the ML completed now."); Ex. 5 at UL00265 ("[Hilti is] purchasing from us one SKU of putty sticks and electrical box inserts.").) Although a clerical error caused the Insert to not be included in the

---

[7] RectorSeal mistakenly withdrew the Multiple Listing. (*See* Ex. 3, RectorSeal Ackerman Dec.)

reinstated Multiple Listing, two facts are indisputable: (1) both RectorSeal and Hilti intended for the Insert's Multiple Listing to be reinstated,[8] and (2) UL treated the Insert's Multiple Listing as being reinstated.[9] There is no evidence Hilti sourced the Insert from a party other than RectorSeal, including during the few months between when the Multiple Listing was withdrawn and its attempted reinstatement.  In any event, FireBlok cannot recover damages for activities during that timeframe.

FireBlok also now alleges the Insert is "different" than the Box Guard, and therefore an unlicensed product. (*See* FireBlok's Rule 11 Sur-Reply, Dkt. No. 40 at 2). FireBlok makes this assertion by taking out of context a statement made by RectorSeal's counsel that the two products were "perhaps not identical." (*See id.*) To eliminate any confusion, RectorSeal provided a declaration asserting, again, that the Insert and Box Guard are identical. (*See* Ex. 3, RectorSeal Ackerman Dec.) Tellingly, FireBlok provides no test data to support its assertion that two versions of the Insert exist. (Answer to CC, Dkt. No. 12 at ¶ 27.) In fact, it has no evidence to support this assertion at all.

Although FireBlok's entire case is pinned on its contention that Hilti and RectorSeal have been lying to everyone, FireBlok did not seek to depose either company. On June 12, 2019, this Court set a November 1, 2019 deadline for the parties to obtain any discovery regarding the Licensing Defense or the source of the accused products. (Dkt. No. 16.) Individuals at both

---

[8] (*See* Ex. 3, RectorSeal Ackerman Dec.)

[9] In 2010, UL tested the Insert under its Classification Program and issued a report indicating the Insert was "judged eligible to bear UL's mark as described on the Conclusion Page of this report." (Ex. 6 at UL000031.) The Conlusion Page stated, "The products covered by this Report have been investigated and are judged to be eligible for publication under UL's product category for Wall Opening Protective Materials." (*Id.* at UL000033.) As UL's document production shows, the Insert has only ever been judged eligible to bear UL's mark because of its Multiple Listing with RectorSeal's BoxGuard.

RectorSeal and Hilti had previously submitted sworn declarations regarding those very issues. (*See* Dkt. Nos. 29-1, 29-29.) Yet the 142 days of this discovery period came and went without FireBlok noticing depositions for the declarants or anyone else at RectorSeal or Hilti. FireBlok knew those depositions would simply confirm what Hilti and RectorSeal have been saying for years: Hilti's only source for the accused products is RectorSeal.

### B. All of the evidence supports Hilti's immunity from FireBlok's allegations of infringement.

Each of the accused Inserts is covered by the License, which provides broad immunity to RectorSeal's customers. Hilti provided evidence to FireBlok to conclusively establish that, for the entirety of the period relevant for this lawsuit, Hilti purchased the Insert from only RectorSeal, and every FireBlok allegation to the contrary either has no basis in fact or a logical and reasonable explanation. Therefore, the Inserts fall under the License, and Hilti is immune from this suit.

#### 1. The License provides broad immunity for RectorSeal's customers, like Hilti.

The License includes multiple paragraphs that protect RectorSeal's customers from claims of infringement. Paragraph 4.2 provided RectorSeal an irrevocable license to the '167 Patent. (Dkt. No. 29-5 at ¶ 4.2.) In addition to that license, ¶ 4.4 provides immunity from suit for infringement to anyone who purchases or has purchased "a RectorSeal product *either directly from RectorSeal or through intermediary vendors*." (*Id.* at ¶ 4.4 (emphasis added).) A "RectorSeal product" is defined as "the Box Guard and Cover Guard products of RectorSeal under these trade names *or other trade names*." (*Id.* at ¶ 1.2 (emphasis added).) The paragraph clarified that the immunity covered the party's "use or resale of such product" and that "[n]o payment or royalty obligation shall be due from any person or entity under this paragraph." (*Id.*)

The License went into effect on January 14, 2011, and was conditioned only upon receipt of payment. Paragraph 4.2 states that the License is irrevocable and "[i]n consideration of receipt

of the additional sum set forth in Paragraph 4.3 below." (*Id.* at ¶ 4.2.) FireBlok admitted that RectorSeal paid the amount referenced in ¶ 4.3. (Dkt. No. 12 at ¶ 63.) Moreover, ¶ 4.4 granted immunity without requiring any additional payment or condition. (License, Dkt. No. 29-5 at ¶ 4.4.) As such, the protections granted in ¶ 4.2 and ¶ 4.4 remain in effect to all who purchase RectorSeal's Box Guard or Cover Guard products under those trade names or other trade names.

### 2.    Hilti purchased the Insert exclusively from RectorSeal.

Hilti purchased the Insert exclusively from RectorSeal, and it has consistently provided extensive evidence to support that incontrovertible fact. For example, both RectorSeal and Hilti provided declarations stating under penalty of perjury that RectorSeal manufactures and provides the Insert to Hilti. (*See* Dkt. Nos. 29-1, 29-11, 29-29.) Hilti also provided the Terms and Conditions of Purchase contract that Hilti and RectorSeal entered into in 2006, clearly evidencing a buyer/seller relationship. (Dkt. No. 29-2.) Hilti further provided records showing the quantity of Inserts Hilti purchased from RectorSeal to be slightly more but approximately the same as Hilti's sales to its customers, which makes sense because Hilti could only sell up to the amount of Inserts it procured from RectorSeal, its only source for the Insert. (Dkt. Nos. 29-12, 29-15, 29-19.) RectorSeal also provided 225 pages of Hilti invoices from February 2008 to October 2017 further corroborating Hilti's records. (Ex. 3-D.) Moreover, UL and LEED[10] documentation was provided confirming that RectorSeal manufactures the Inserts at its Texas facility (Dkt. Nos. 29-21, 29-25, 29-27), and Hilti's Green Building Materials Certification Form also indicates the Inserts are manufactured in Texas, unlike nearly every other product listed (Dkt. No. 31-4). RectorSeal

---

[10] "LEED, or Leadership in Energy and Environmental Design, is the most widely used green building rating system in the world. Available for virtually all building, community and home project types, LEED provides a framework to create healthy, highly efficient and cost-saving green buildings. LEED certification is a globally recognized symbol of sustainability achievement." (https://new.usgbc.org/leed.)

operates a manufacturing facility in Texas, but Hilti does not.[11]

For FireBlok's allegations to have any merit, Hilti must have obtained and then used or sold at least one of the accused Inserts from a party other than RectorSeal—that prerequisite does not exist. In support of its allegation that RectorSeal does not manufacture the Insert, FireBlok points to differences between the product documentation of Hilti's Insert and RectorSeal's Box Guard. (Dkt. No. 1 at ¶¶ 38-42.) FireBlok also points to an advertising video that merely conveys that Hilti takes full manufacturing responsibility for its entire Firestop product line, which includes "over 1,200 tested systems."[12] (*Id.* at ¶¶ 36-37.) None of FireBlok's allegations, however, identifies any variety of accused Inserts that is not provided by RectorSeal ***because all of the Inserts are provided by RectorSeal***. For FireBlok's allegations to be true, Hilti and RectorSeal must be lying in their declarations, falsifying sales records, and submitting incorrect information to UL. That scenario is wholly implausible and belied by the evidence provided.

### 3. The License covers the Firestop Box Insert.

RectorSeal manufactured each of the accused Inserts, immunizing Hilti from suit under the License and the doctrine of patent exhaustion. Recognizing its inability to establish a non-RectorSeal Insert, FireBlok pivoted to argue the RectorSeal-supplied Inserts are unlicensed because they were either unmarked or different in some way from RectorSeal's self-branded Inserts. Neither argument is persuasive, and summary judgment should be granted.

Pursuant to ¶ 4.4 of the License, Hilti is immune from this suit. As discussed above, RectorSeal manufactured each of the accused Inserts and sold them to Hilti for resale. The License

---

[11] Hilti maintains its North American headquarters in Texas, but it does not operate a manufacturing facility there. *See* https://www.hilti.com/content/hilti/W1/US/en/company/about-hilti/company-profile/about-us.html. There is no evidence that any Texas manufacturer other than RectorSeal exists.

[12] https://www.youtube.com/watch?v=0PUcbVD7Slc at 1:50.

provides immunity to those who purchase a "RectorSeal Product" and resell that product. (License, Dkt. No. 29-5 at ¶ 4.4.) The License defines "RectorSeal Products" as "the Box Guard or Cover Guard **products** of RectorSeal **under these trade names or other trade names**." (*Id.* at ¶ 1.2 (emphasis added).) The Insert is the same product that RectorSeal sells as the Box Guard. It therefore is a RectorSeal Product under the License, and the License thus immunizes Hilti from FireBlok's claims in this suit.

FireBlok's claims are also barred under the doctrine of patent exhaustion. An authorized sale of a patented product exhausts the patent monopoly as to that product, allowing a purchaser of such a product from the patent owner or one licensed by the patent owner to use or resell the product free of control or conditions imposed by the patent owner. *See, e.g.*, *Intel Corp. v. ULSI Corp.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1092 (1994) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent . . . ."). Paragraph 4.2 of the License provided RectorSeal with a royalty-free license to the '167 Patent, and RectorSeal paid a total of $75,000 for that License. It then resold all of the accused Inserts to Hilti, which, under the doctrine of patent exhaustion, is free to use or resell the products. *See id.* FireBlok's patent monopoly is thus exhausted with respect to all Inserts manufactured by RectorSeal, barring any recovery to FireBlok from Hilti, RectorSeal's customer.

FireBlok's contention that a failure to mark would preclude an Insert from being licensed is contradicted by the License and black letter law. FireBlok contends, "[T]o the extent Hilti failed to mark the accused products with FireBlok's patent at any time during the term of the license, Hilti would not be entitled to protection under the license." (FireBlok's Rule 11 Resp., Dkt. No.

31 at 13.)[13] But the applicable provision requires RectorSeal, not Hilti, to mark its products. (Dkt. No. 29-5 at ¶ 4.6.) Moreover, black letter contract law includes a presumption that words do not create a condition of duty—they are promissory. *See* 8 Corbin on Contracts § 30.14 (2018). And the Georgia law governing the License holds that "where the rules of construction will allow, equity seeks always to construe conditions subsequent into covenants and to relieve against forfeitures." *McDuffie v. Criterion Cas. Co.*, 449 S.E.2d 133, 135 (Ga. Ct. App. 1994) (internal quotations removed). Under this law, the irrevocable license in ¶ 4.2 and the marking requirement in ¶ 4.6 are both covenants and not conditioned upon one another.[14] Indeed, the irrevocable license was granted "[i]n consideration of receipt of the additional sum set forth in Paragraph 4.3,"[15] and the marking requirement began after the effective date of the irrevocable license, "upon the exhaustion of inventory of labels and upon the reordering of labels for RectorSeal Products." (License, Dkt. No. 29-5 at ¶¶ 4.2, 4.6.) As such, the applicable law and the License contradict FireBlok's allegation that Inserts are only licensed if marked.

FireBlok's recent actions also indicate Hilti has no duty to mark. On September 9, 2019, FireBlok sued RectorSeal for breach of the License's marking provision. (FireBlok's CCs v. RectroSeal, Ex. 7 at 19.) FireBlok seeks "[a]n accounting of all private-label sales of RectorSeal's Box Guard and Cover Guard products" and "[a]n award of damages necessary to compensate Defendant/Counterclaim Plaintiff for Plaintiff/Counterclaim Defendant's wrongful acts and activities." (*Id.* at 22.) In other words, FireBlok seeks recovery from both RectorSeal and Hilti for

---

[13] FireBlok contradicts this position in its Infringement Contentions, stating "Each of Hilti's Firestop Box Insert products are marked with the '167 patent." (Dkt. No. 29-38 at 2.)

[14] FireBlok's counsel admitted it did not know of any case law to support its position at the June 12, 2019 scheduling conference. Since that time, FireBlok has yet to provide any case law supporting its marking argument.

[15] FireBlok admitted it received this money. (Answer to CC, Dkt. No. 12 at ¶ 63.)

selling the same unmarked Inserts. Such double recovery is impermissible,[16] and FireBlok's pursuit of damages from RectorSeal should foreclose its recovery here.

Similarly, FireBlok's contention that RectorSeal sells Hilti an unlicensed version of its products is contradicted by the License and the law. FireBlok alleges, "RectorSeal sells Hilti a product that is different from the product RectorSeal takes to market on its own." (FireBlok's Rule 11 Sur-Reply, Dkt. No. 40 at 1.) According to FireBlok, "the license between FireBlok and RectorSeal requires RectorSeal to only sell the RectorSeal products." (*Id.*) But the License explicitly defines the "RectorSeal Products" to be "the Box Guard and Cover Guard products *of RectorSeal* under these trade names *or other trade names*." (Dkt. No. 29-5 at ¶ 1.2 (emphasis added).) There is no requirement that RectorSeal itself be the entity selling the licensed products. In any case, as discussed above, RectorSeal provided a declaration asserting, again, that the Insert and Box Guard are identical. (*See* Ex. 3, RectorSeal Ackerman Dec.) As such, FireBlok's latest excuse for why the Insert is not licensed should be rejected.

## V.    CONCLUSION

For the foregoing reasons, Hilti respectfully requests the Court grant summary judgment of non-infringement pursuant to the License.

---

[16] "Generally, the double recovery of damages is impermissible." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006) (citing *Junker v. Eddings*, 396 F.3d 1359 (Fed. Cir. 2005); *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317 (Fed. Cir. 2003); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2002); *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1362 (Fed. Cir. 1998); *CPG Prods., Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1014 n.4 (Fed. Cir. 1985)). "[I]n determining whether there has been an impermissible double recovery of damages, the inquiry focuses on whether the damages issue arose from the same set of operative facts." *Id.* at 1018

Dated:  November 1, 2019

Respectfully submitted,

FISH & RICHARDSON P.C.


By:  */s/ Neil J. McNabnay*　　　　　　　　
　　　 Neil J. McNabnay
　　　 Texas Bar No. 24002583
　　　 mcnabnay@fr.com
　　　 Ricardo J. Bonilla
　　　 Texas Bar No. 24082704
　　　 rbonilla@fr.com
　　　 Aaron P. Pirouznia
　　　 Texas Bar No. 24098958
　　　 pirouznia@fr.com
　　　 1717 Main Street, Suite 5000
　　　 Dallas, TX 75201
　　　 (214) 747-5070 Telephone
　　　 (214) 747-2091 Facsimile

**COUNSEL FOR DEFENDANT
HILTI, INC.**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 1, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Neil J. McNabnay*　　　　　　
Neil J. McNabnay