**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FIREBLOK IP HOLDINGS, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:19-cv-00023-RWS-RSP |
| § | |
| HILTI, INC., § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM ORDER**

Before the Court is a Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11 Motion"), **Dkt. No. 29**, and Motion for Exceptional Case ("Section 285 Motion"), **Dkt. No. 77**, filed by Defendant Hilti, Inc. ("Hilti"). In the Section 285 Motion, Hilti asks that this Court find this case exceptional and award Hilti "its reasonable attorneys' fees of $269,214.91." *Id*. at 13. In the Rule 11 Motion, Hilti asks that this Court issue the following sanctions against Plaintiff FireBlok IP Holdings, LLC ("FireBlok"): "(1) dismiss this case with prejudice; (2) award to Hilti its fees and costs spent on this meritless case; and (3) any other sanctions the Court deems appropriate." Dkt. No. 29 at 18. After consideration, the Court **DENIES** Hilti's Rule 11 Motion and Section 285 Motion.

**I.    BACKGROUND[1]**

Hilti sells a product called the "Hilti Firestop Box Insert" or "Insert" for short. FireBlok contacted Hilti in 2016 claiming that the Insert infringed FireBlok's U.S. Patent No. 6,252,167 ("the '167 patent"). In response, Hilti messaged RectorSeal, the purported sole manufacturer of the Insert since 2006. RectorSeal told FireBlok that Hilti is authorized to sell the Insert due to a

---

[1] Much of the background in this case has been explained previously. *See, e.g.*, Dkt. No. 75; *see also* Dkt. No. 69. Some of the key facts are reproduced here as needed to help explain why the current motions were denied.

license, Dkt. No. 29-5, entered between RectorSeal and FireBlok's predecessor-in-interest, Intumescent Technologies ("License"). Dkt. No. 29-3. The License grants RectorSeal, and its affiliates, which RectorSeal and Hilti claim includes Hilti, the right to sell certain products, such as the Insert, that practice the '167 patent as long as they are manufactured by RectorSeal.[2]

However, FireBlok, unsatisfied by this representation, asked Hilti for documentation showing that RectorSeal was the sole supplier of the Insert. Hilti provided an affidavit, Dkt. No. 29-11, and some sample documentation reflecting its raw data, Dkt. Nos. 29-12–29-15. FireBlok, unconvinced due to perceived deficiencies in the data, rejected Hilti's license defense since it believed that RectorSeal was not the sole manufacturer of the Insert as required under the License.

After further negotiations failed, FireBlok brought suit in 2019. *See* Dkt. No. 1. Hilti filed its Rule 11 Motion a few months later, claiming the suit was unjustified as FireBlok had no reasonable basis to believe the Insert was not covered under the License. *See* Dkt. No. 29.[3] After targeted discovery on the license issue, the Court ultimately agreed with Hilti that FireBlok had provided insufficient evidence to support its theory that RectorSeal was not the sole manufacturer of the Insert. Consequently, the Court granted summary judgment for Hilti based on the license defense. *See* Dkt. No. 75. Hilti then filed its Section 285 Motion. *See* Dkt. No. 77.

While Hilti is clearly the prevailing party in this litigation, the parties dispute whether it was reasonable for FireBlok to sue Hilti at all. Hilti argues it provided conclusive evidence pre suit that RectorSeal was the sole manufacturer of the Insert, meaning Hilti could sell the Insert due to the License, and continued to provide additional evidence throughout the litigation. FireBlok

---

[2] The License is more limited than this, *see* Dkt. No. 29-5 at § 4.4, but not in a manner that is relevant to today's decision.
[3] The Court deferred its ruling on this motion "until after it has ruled on the merits of the claims." Dkt. No. 49

argues that Hilti's evidence contained enough gaps to make reasonable FireBlok's belief that RectorSeal was not the sole source of the Insert.

## II. LEGAL STANDARD

### a. 35 U.S.C. § 285

In general, the American Rule precludes the winner from recovering attorneys' fees from the loser. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). However, the Patent Act allows district courts, in "exceptional cases," to "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

An exceptional case is—by definition—rare. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553–54 (2014). It is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 554. District courts are supposed to decide whether a case is exceptional "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*.

To make such a determination, district courts consider a nonexclusive list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). These and other factors have led this Court to declare some cases exceptional and others not. *Compare My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) (finding the case exceptional) *with Effective Expl., LLC v. BlueStone Nat. Res. II, LLC*, No. 2:16-CV-00607-JRG-RSP, 2018 WL 466246 (E.D. Tex. Jan. 18, 2018) (finding the case not exceptional). "The movant must show exceptionality by a

preponderance of the evidence." *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 842 (E.D. Tex. 2017) (citing *Site Update Sols., LLC v. CBS Corp.*, 639 Fed.Appx. 634, 637 (Fed. Cir. 2016)).

### b. Federal Rule of Civil Procedure 11

Rule 11 is violated when an attorney signs a pleading for purposes of harassment or without an objective good-faith basis for believing the claims are warranted. Rule 11 relevantly states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

FED. R. CIV. P. 11(c)(2).

The Federal Circuit applies regional-circuit law when determining whether an attorney has violated Rule 11. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1367 (Fed. Cir. 2012). "In the Fifth Circuit, when determining whether there was a Rule 11 violation, 'the standard under which an attorney is measured is an objective, not subjective standard of reasonableness

under the circumstances.'" *Id*. (quoting *Whitehead v. Food Max of Miss., Inc.*, 322 F.3d 796, 803 (5th Cir. 2003) (*en banc*)).

### III. ANALYSIS

#### a. Section 285 Motion

Hilti argues that it provided FireBlok "a mountain of evidence supporting Hilti's position that its products came only from a licensed source" before this suit was filed and "that mountain only grew higher throughout discovery." Dkt. No. 77 at 1. It points to multiple documents it gave FireBlok pre suit to show that it only purchased the Insert from RectorSeal and did not manufacture the Insert itself. *Id*. at 2 (citing Dkt Nos. 29-11–29-15, 29-19, 29-21). The cited exhibits include multiple affidavits supporting Hilti's license defense, Hilti documents reflecting purchases of the Insert from RectorSeal as well as Hilti sales of the Insert, and third-party records. Additional documentation was given after suit was filed. *See* Dkt. Nos. 29-1, 29-25, 29-29, 29-40.

FireBlok counters that while Hilti may have provided some documentation, it fails to demonstrate that Hilti ever purchased the accused products from RectorSeal. *See* Dkt. No. 31 at 8–11. FireBlok argues that the provided documents are flawed in a number of ways. For example, it argues that the spreadsheets showing purchases and sales, Dkt. Nos. 29-12, 29-15, 29-19, are unmarked and prepared specifically for the purposes of this litigation. FireBlok therefore questions the source of the information. *Id*. at 10.

FireBlok also largely focuses on its belief that certain key information was missing from Hilti's productions, especially pre suit. FireBlok believed information such as "a contract for the purchase of the Insert," Hilti "communications with RectorSeal ordering additional Inserts," or "financial documents about individual purchases of the Insert such as purchase orders, invoices, shipping documents (e.g., bills of lading, etc.), or payment records" would be readily available.

Dkt. No. 84 at 3–4. Yet, FireBlok argues "[n]o contracts naming the accused product, no invoices naming the accused products, and no other supporting financial documents were ever produced by Hilti." Dkt. No. 84 at 5; *see also* Dkt. No. 1 at 5–8 (identifying allegedly missing or contradictory information in the complaint). Further, it argued the Insert was manufactured for years without the '137 patent mark as required under the License, indicating to FireBlok that RectorSeal did not make the Insert. Dkt. No. 84 at 10; *see also* Dkt. No. 1 at ¶¶ 61–62. FireBlok argues this lack of information implied Hilti sold Inserts sourced from someone other than RectorSeal.

FireBlok also relied on Hilti's advertising videos, packaging, and website, as sources of affirmative evidence indicating Hilti manufactured the Insert itself. FireBlok's complaint details how it concluded that RectorSeal was not the sole supplier of the Insert. Dkt. No. 1 at ¶ 59 ("Defendant's claim that it is purchasing its product under the RectorSeal License also contradicts its advertising which states that Defendant has always researched, developed and manufactured its Firestop products"); *see also id.* at ¶¶ 36–43, 60. Finally, FireBlok pointed to third-party statements as supporting its conclusion. Dkt. No. 84 at 6–8.

Hilti ultimately had an answer for many of FireBlok's issues. Hilti explained that it only entered one general purpose contract with RectorSeal in 2006 that covered all products Hilti purchases from RectorSeal including the Insert. Dkt. No. 29 at 2 (citing Dkt. No. 29-1–29-2). Therefore, there was no contract specifically for the purchase of the Insert. Hilti also explained that the purported deficiencies were due to Hilti not maintaining hard-copy records. Instead, the documents it provided reflected raw data retrieved from Hilti's data management system, which maintains data on a running 5-year basis. It also explains that the marking requirement only took effect "upon exhaustion of inventory of labels" which it argues only occurred in 2017 when the

Insert began to be marked. Dkt. No. 29-5 at ¶ 4.6. Finally, it argues the third-party statements only support FireBlok when taken out of context.

Yet, when suit was filed, FireBlok did not have all this information nor evidence confirming its accuracy. This missing information combined with the evidence FireBlok acquired during its pre suit investigation helps justify and explain FireBlok's belief and decision to file suit.

Ultimately, Hilti prevailed with its license defense. However, FireBlok's mistaken belief here does not rise to the level of exceptionality. First, this is not the case of a serial litigator looking for a quick settlement based on boilerplate allegations. FireBlok filed only one targeted suit in this Court, alleging it suffered damages in the millions of dollars. *See* Dkt. No. 77-1 at 4. Furthermore, it had a valid foundation—the parties agree that the Insert practiced FireBlok's '137 patent but was not marked. *Id*. at 2–3. Thus, at time of filing, it was not entirely clear that RectorSeal manufactured the Insert. Without the License, this case would have turned out quite differently.

Importantly, FireBlok's assertions were founded on more than pure conjecture. FireBlok explained in its complaint what it relied on to show RectorSeal was not the sole supplier of the Insert. Dkt. No. 1 at ¶¶ 36–43, 59–60. FireBlok was also strongly persuaded by what it deemed Hilti's "lack of evidence supporting [Hilti's] claim that it has been purchasing its Firestop Box Inserts under the RectorSeal License." *Id*. at ¶ 55; *see also id*. at ¶¶ 46–54. Therefore, FireBlok did not believe Hilti's assertion since Hilti "did not provide any other documentation, including contracts between Defendant and RectorSeal, correspondence evidencing sales of the RectorSeal product to Defendant or the L14A agreement form." *Id*. at ¶ 57. The Court agrees that the absence of such documentation was unusual.

In sum, based on the totality of the circumstances, this case does not represent one of those rare cases that stands out from others due to its unreasonableness. FireBlok had a theory—one it

could plausibly support with objectively reasonable factual and legal bases. Although it was ultimately unsuccessful after discovery proved unfruitful, its initial belief was not clearly doomed from the start. For these reasons, the Section 285 Motion is denied.

### b. Rule 11 Motion

A motion for sanctions made pursuant to Rule 11 must meet certain requirements. First, the motion must be made separately from any other motion. Second, the movant must give the other party 21 days after service to correct or withdraw the challenged paper, claim, defense, contention, or denial. Finally, the motion must describe the specific conduct that allegedly violates Rule 11(b). FED. R. CIV. P. 11(c)(2).

Hilti sent FireBlok an email indicating its intent to file a motion for sanctions pursuant to Rule 11 on July 15, 2019. *See* Dkt. No. 29-41. On August 7, 2019, more than 21 days after sending the email, Hilti filed its Rule 11 Motion. Dkt. No. 29. Within the motion, Hilti complains that "FireBlok has willfully turned a blind eye and pursued litigation with no basis whatsoever to pursue its claims." *Id.* at 1. Hilti goes on to argue that "where the failure to conduct such an investigation or, as here, when the willful ignorance of the results of such an investigation leads to the filing of a frivolous lawsuit, the result is a waste of the judicial resources." *Id.* Hilti then states that "the appropriate sanctions are dismissal of FireBlok's claims and an award to Hilti of its fees and costs defending those frivolous claims." *Id.*

As an initial matter, summary judgement has been granted in favor of Hilti so FireBlok's claims have been dismissed as requested, albeit through a vehicle other than the Rule 11 Motion. The rest of Hilti's Rule 11 Motion however is denied as it fails both procedurally and substantively. Procedurally, this motion fails because it is unclear what Hilti is challenging. Hilti does not clearly point to a specific paper, claim, defense, contention, or denial that it seeks FireBlok to correct or

withdraw. Along the same lines, it is not clear what specific conduct Hilti believes allegedly violates Rule 11(b). Hilti appears to ask FireBlok to dismiss the entire lawsuit since it contends FireBlok has no objectively reasonable basis to continue pursuing its claims. *See* Dkt. No. 29-41. If so, this is not a proper use of Rule 11.

Even if it was, Hilti's argument fails substantively. The complaint mostly contains proper factual assertions. Further, as explained above, objectively, FireBlok had a good faith basis for filing suit. Hilti has not proven that FireBlok filed this suit for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Further, FireBlok explained in its detailed complaint how it derived its legal and factual basis for believing Hilti infringed the '137 patent. This belief was based on facts available to FireBlok from its 3-year pre suit investigation as well as its denial of Hilti's assertions based on a lack of information. Essentially, FireBlok had a right to seek legal recourse. While Hilti believes FireBlok had a weak case, that does not on its own justify sanctions under Rule 11. FireBlok articulated facts and a good faith belief for its conclusion that Hilti was liable for infringement of the '137 patent. This is enough to prevent the Rule 11 Motion from being granted.

## IV. CONCLUSION

Having considered the record before it, including the briefing on the current motions, and for the reasons stated in this Order, the Court **DENIES** Hilti's Section 285 Motion and **DENIES** Hilti's Rule 11 Motion.

**SIGNED this 9th day of June, 2020.**

                                            ROY S. PAYNE
                                            UNITED STATES MAGISTRATE JUDGE